IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DESMEN WILLIAMS,

      Plaintiff,

      v.

SHAWNEE F, LLC, AND DOBBS EQUITY
PARTNERS, LLC,

      Defendants.

Case No. 25-2585-JAR

## MEMORANDUM & ORDER

Plaintiff Desmen Williams filed this action against his former employer, Defendant Shawnee F, LLC and Dobbs Equity Partners, LLC, under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, alleging that Defendants discriminated against him on the basis of his race, created a hostile work environment, and retaliated against him for reporting the discrimination and harassment. This matter is now before the Court on Defendants' Motion to Dismiss (Doc. 6) for failure to exhaust the internal union grievance procedure. The motion is fully briefed, and the Court is prepared to rule. For the reasons stated below, the Court denies Defendants' motion.

### I.    Legal Standard

Defendants move to dismiss for lack of subject matter jurisdiction. Defendants claim, without offering any authority, that Plaintiff's failure to exhaust internal union grievance procedures deprives the Court of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Exhaustion of administrative remedies under the federal employment discrimination statutes is

not jurisdictional.[1] To the extent failure to exhaust the union's internal grievance procedure is jurisdictional, the Court recognizes that federal courts are courts of limited jurisdiction and must therefore have a statutory or constitutional basis for exercising jurisdiction.[2] The party seeking to invoke federal subject matter jurisdiction has the burden to establish that jurisdiction is proper,[3] and mere conclusory allegations of jurisdiction are not enough.[4]

Defendants also argue in the motion to dismiss that Plaintiff's Complaint is deficient, in that it fails to allege anything about the union contract, collective bargaining agreement, or internal union grievance process, suggesting that Defendants are seeking dismissal under Fed. R. Civ. P. 12(b)(6), for failure to state a claim.[5]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations that, assumed to be true, "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[6] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[7] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[8] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action'

---

[1] *Lincoln v. BNSF Ry Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

[2] *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).

[3] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[4] *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[5] Defendants offer no authority that Plaintiff must plead in his Complaint facts about the union contract, collective bargaining agreement, internal union process or his failure to utilize the process.

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[7] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

will not suffice; a plaintiff must offer specific factual allegations to support each claim."[9] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[10]

## I.     Background

The following facts are derived from Plaintiff's Complaint.[11]  For the purpose of deciding this motion, the Court assumes these facts to be true and draws all reasonable inferences in Plaintiff's favor.

Plaintiff Desmen Williams, who is Black, worked at the Shawnee Mission Ford dealership in Johnson County, Kansas from April 2024, until his discharge on January 10, 2025. The Shawnee Mission Ford dealership is owned, controlled, and/or operated by Defendants Shawnee F, LLC ("Shawnee F") and Dobbs Equity Partners, LLC ("Dobbs").  Shawnee F is an entity engaged in an industry affecting commerce which has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Shawnee F employs over 100 employees.  Dobbs is also an entity engaged in an industry affecting commerce which has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

During his employment, Plaintiff was subjected to ongoing racial harassment, discrimination, and retaliation from White employees.  A White coworker, "D.B.," interfered with Plaintiff's ability to do his job, and when Plaintiff objected, D.B. told Plaintiff to report it to

---

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[10] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[11] Doc. 1.  The Court may also consider the exhibits attached to the Complaint because they are "part of the pleading for all purposes." Fed. R. Civ. P. 10(c).  The Court therefore considers the two EEOC Charges of Discrimination and the two EEOC Notices of Right to Sue attached to the Complaint.

"your daddy." When D.B. told Plaintiff to report his conduct to "your daddy," D.B. and Plaintiff got into a verbal altercation. Plaintiff did not report D.B.'s conduct to his "daddy," but instead spoke to Plaintiff's direct supervisor, "Manager Baldridge," who is White, about the incident. Plaintiff was disciplined in relation to the verbal altercation with D.B. but was led to believe that D.B. was not disciplined.

Plaintiff learned that personal belongings he kept in the Parts Department had been tampered with, his email account had been accessed, and a foreign device had been added to the Bluetooth application on his iPad and Apple watch. Plaintiff told Baldridge that someone at the dealership had accessed his iPad and/or Apple watch, likely when they were charging, that the two devices were linked, and that a foreign device had been added to Plaintiff's Bluetooth application. Plaintiff told Baldridge that he feared one or more coworkers were doing this to harass him, and were either eavesdropping on Plaintiff, trying to eavesdrop on Plaintiff, or making it look that way. Baldridge told Plaintiff that he would investigate. Plaintiff later learned that the device added to his Bluetooth application was a specific audio speaker. Plaintiff showed an image of the speaker to Baldridge, who told Plaintiff that he recognized the speaker, that it belonged to white coworker G.V., and that he would talk to G.V. and follow up with Plaintiff. Baldridge never spoke to Plaintiff about the issue again, and G.V. continued working without any noticeable discipline. Plaintiff then found a used and soiled band aid stuffed inside his backpack. Plaintiff reported the incident to Baldridge, who—as far as Plaintiff could tell—did nothing about the incident. Plaintiff then began keeping his belongings in a new area of the dealership. In response, Baldridge instructed Plaintiff to move his belongings back to the Parts Department.

A White coworker, W.K., referred to Black employees as "boy." On or about October 8, 2024, W.K. referred to Plaintiff and another Black employee as "boy." When told to stop, W.K. said that it was his right to call Black employees "boy." Plaintiff then complained to Baldridge about W.K. referring to Plaintiff and another Black employee as "boy," and saying it was his right to do so. As the harassment escalated, so did Plaintiff's complaints.

During Plaintiff's employment, Defendants maintained policies on harassment and discrimination that require supervisors or managers to immediately refer complaints about harassment or discrimination to the human resources department.

On or about October 18, 2024, Baldridge issued Plaintiff excessive and/or unwarranted written discipline for the same or similar conduct that White employees engaged in, without noticeable discipline. On or about October 18, 2024, Plaintiff told Baldridge that he did not feel supported by Baldridge and his coworkers, and that White employees engaged in conduct that was the same, similar, or worse than the conduct for which Plaintiff was being disciplined but were not—as far as Plaintiff knew—disciplined, suspended, or discharged.

On or about October 18, 2024, W.K. entered a work restroom where Plaintiff was alone, told Plaintiff he had a big penis, and asked Plaintiff if he wanted to see his penis. When Plaintiff objected and said no, W.K. continued as if he was going to expose himself to Plaintiff, and Plaintiff left. Plaintiff complained to Baldridge about W.K. attempting to expose himself to Plaintiff. In response, Baldridge told Plaintiff that he was "too sensitive." In early December 2024, D.B. and another White employee talked about their desire to resolve conflicts by reinstituting "public hangings" while looking at Plaintiff.

On or about December 10, 2024, Baldridge issued Plaintiff a final warning regarding Plaintiff's performance, which was excessive and/or unwarranted. On or about December 10,

2024, Plaintiff objected to the final warning, telling Baldridge that the policies were not equally enforced or applied and that White employees have interfered with his work, referred to Black employees as "boy," attempted to expose themselves, discussed "public hangings," and tampered with his personal belongings without suspension, discharge, or other noticeable discipline. On or about December 10, 2024, Plaintiff asked Baldridge if he was issuing Plaintiff the final warning because Plaintiff is Black.

After making multiple complaints in December 2024 to Baldridge, his direct supervisor, Plaintiff complained about racial discrimination and retaliation to Shawnee F's human resources employee, K.C., who is White. She advised Plaintiff to make a written complaint, told Plaintiff she would forward the complaint to Dobbs, and that Dobbs would respond.

On or about December 12, 2024, Plaintiff submitted a written, detailed, complaint about racial harassment and retaliation to Shawnee F's human resources department, which was then forwarded to Dobbs. In late December 2024, Plaintiff was contacted by D.N, who is Dobbs' Director of Automotive Operations, and they discussed Plaintiff's written complaint of racial discrimination and retaliation. D.N. told Plaintiff that he would discuss Plaintiff's concerns with Plaintiff's direct supervisor. On January 10, 2025, Baldridge discharged Plaintiff. Baldridge told Plaintiff that he was being discharged for performance and refusing to talk to coworkers—which was misleading, false, and a coverup for unlawful discrimination.

In April 2025, Plaintiff filed a Charge of Discrimination with the EEOC against both Defendants. On July 11, 2025, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff filed the Complaint in this case on October 8, 2025.

**III.     Discussion**

There is no dispute that Plaintiff duly exhausted his administrative remedies through the EEOC process under Title VII.[12] Defendants move to dismiss for lack of subject matter jurisdiction because Plaintiff failed to exhaust the internal grievance procedures under the collective bargaining agreement ("CBA") between his union, the International Association of Machinists and Aerospace Workers, and Defendants.

It is long-settled law in the Tenth Circuit that an employee's statutory rights under Title VII and 42 U.S.C. § 1981 to sue an employer are not dependent on first exhausting contractual grievance procedures. In *Harrison v. Eddy Potash, Inc.*,[13] the court held that a union employee who brought Title VII claims against her employer in federal court was not required to first pursue the grievance procedure outlined in the CBA, relying on the Supreme Court's decision in *Alexander v. Gardner-Denver Co*.[14] In *Gardner-Denver*, the Supreme Court held that a union employee was not foreclosed from filing a Title VII action against his employer in federal court though he had first filed a grievance against the union for failing to enforce the nondiscrimination clause in the CBA.[15] As the Court explained, "[i]n submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress."[16]

---

[12] *See* 42 U.S.C. § 2000e-5(e).

[13] 112 F.3d 1437, 1452 (10th Cir. 1997), *vacated on other grounds by Eddy Potash, Inc. v. Harrison*, 524 U.S. 947 (1998).

[14] 415 U.S. 36 (1974).

[15] *Id.* at 47–49; *see also Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998) ("[A] Title VII plaintiff is not required to exhaust her employer's internal grievance procedures before filing suit.").

[16] *Gardner-Denver*, 415 U.S. at 49.

7

As the Tenth Circuit explained in *Harrison*, *Gardner-Denver* is "[t]he seminal decision concerning the 'proper relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements in the resolution and enforcement of an individual's rights to equal employment opportunities under Title VII.'"[17]  And that proper relationship recognizes that "in enacting Title VII, Congress had granted individual employees a nonwaivable public law right to equal employment opportunities that was separate and distinct from the rights created through the 'majoritarian processes' of collective bargaining" given that contractual grievances and arbitration procedures provided an inadequate forum for enforcement of Title VII rights.[18]  This is so, "because contractual grievances and arbitration procedures provided an inadequate forum for enforcement of Title VII rights," thus, "the Court concluded that Title VII claims should be resolved by the courts de novo."[19]

The Tenth Circuit further explained that the Supreme Court's decision seventeen years later in *Gilmer v. Interstate/Johnson Lane Corp.*,[20] is distinguishable from and did not overrule *Gardner-Denver*.[21]  In *Gilmer*, the Supreme Court held that the plaintiff was required to first arbitrate his claim that his discharge violated the Age Discrimination in Employment Act ("ADEA").[22]  There was an important distinction between *Gilmer* and *Gardner-Denver*: the plaintiff in *Gilmer* had agreed to arbitrate his statutory claim when, as a condition of his employment, he signed an application to register as a securities representative with several stock

---

[17] *Harrison*, 112 F.3d at 1452.

[18] *Id.* (quoting *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 737–38 (1981)).

[19] *Id.* (quoting *Barrentine*, 450 U.S. at 738).

[20] 500 U.S. 20 (1991).

[21] *Harrison*, 112 F.3d at 1453.

[22] *Gilmer*, 500 U.S. at 35.

8

exchanges, which contained a compulsory arbitration clause.[23]  The issue was the enforceability of an agreement to arbitrate statutory claims, and that agreement was not contained in a CBA.  In contrast, "[a]n arbitration clause in a collective bargaining agreement (at least historically) implicates only contractual rights under that agreement."[24]

In *Harrison*, the Tenth Circuit adopted the majority view that *Gardner-Denver* was still good law, meaning union employees are not required to first comply with a CBA's grievance and arbitration procedures prior to filing a Title VII suit.[25]  The Tenth Circuit reasoned that a compulsory arbitration clause in an individually-negotiated employment contract such as in *Gilmer*, implicates only contractual rights under that agreement, whereas union employees are subject to collectively negotiated rights by the union and the union is restricted to waiving collective rights, not individual statutory rights.[26]  An employee who submits a grievance is seeking to vindicate his contractual rights based on the CBA,  a system of private law, outside of the statutory employment rights that are part of a system of public law.[27]

All of the cases Defendants rely upon are inapposite.  In *Clayton*, the employee sued the union for breach of its contractual duty of fair representation under the CBA, raising the issue of whether the employee's failure to exhaust should be excused based on inadequate internal

---

[23] *Id.* at 24.

[24] *Harrison*, 112 F.3d at 1454 (citing *Gardner-Denver*, 415 U.S. at 49).

[25] *Id.* at 1453; *see also Varner v. Nat'l Super Markets*, 94 F.3d 1209, 1213, (8th Cir. 1996) (holding employee is not required to exhaust arbitration and grievance procedures under CBA before bringing Title VII suit); *Tran v. Tran*, 54 F.3d 115, 117 (2d Cir. 1995) (holding plaintiff not required to submit statutory FLSA claims to arbitration under the CBA prior to commencing suit); *Doe ex rel. Doe v. St. Joseph's Hosp.,* 788 F.2d 411, 425 (7th Cir.1986) (holding employee not required to exhaust internal administrative remedies before bringing suit under § 1981 or Title VII.), *overruled on other grounds by Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996); *Smallwood v. Nat'l Can Co.*, 583 F.2d 419, 421 (9th Cir. 1978) ("There is no duty to exhaust union remedies as a precondition to suit under Title VII."); *Rios v. Reynolds Metals Co.,* 467 F.2d 54, 57 (5th Cir. 1972) ("[A]ggrieved employees may seek relief under Title VII without first invoking or exhausting available alternative legal or contractual remedies.").

[26] *Id.* at 1453–54.

[27] *Id.*

grievance procedures.[28] That employee sought vindication of his contractual rights under the CBA, not his statutory rights under the federal civil rights statutes. Similarly, in *Moore v. General Motors Corp.*,[29] the employee's fraud and misrepresentation claims against the employer arose from her contractual rights under the CBA and necessarily first required exhaustion of the grievance procedures under the CBA.[30]

In *Canady v. UAW Local 31*,[31] the employee alleged that the union engaged in race and age discrimination in failing to file a grievance with regard to her change in employment status. She alleged claims under Title VII and the ADEA, as well as a claim for a breach of the duty of fair representation, thus seeking vindication of both her contractual rights and her rights under the federal statutory scheme.[32] The employee's Title VII claims against the union were time barred because she failed to file an EEOC charge within the requisite 300 days and she had failed to exhaust her contractual claims against the union under the internal grievance procedures.[33]

In *Sutton v. Southwest Forest Industries, Inc.*,[34] the plaintiff was suing on a state law claim for retaliatory discharge for filing a worker's compensation claim, not under the federal civil rights statutes.[35] And in *Wynn v. Boeing Military Airplane Co.*,[36] the employee brought claims under § 1981 and for breach of the CBA. The contract claims were dismissed for failure

---

[28] 451 U.S. 679, 696 (1981).

[29] 739 F.2d 311 (8th Cir. 1984).

[30] *Id.* at 317.

[31] 368 F. Supp. 2d 1143 (D. Kan. 2004).

[32] *Id.* at 1150.

[33] *Id.*

[34] 628 F. Supp. 1034 (D. Kan. 1985).

[35] *Id.* at 1035.

[36] 595 F. Supp. 727 (D. Kan. 1984).

to exhaust the union's internal grievance procedures.[37]  The § 1981 claims were not dismissed because there was no requirement to first exhaust under the internal grievance procedures.[38]

In short, Plaintiff was not required to exhaust the union's internal grievance procedures before suing his employers under Title VII or § 1981.  Defendants' motion to dismiss is therefore denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 6) is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 12, 2026

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                UNITED STATES DISTRICT JUDGE

---

[37] *Id.* at 728.

[38] *See id.*